**Matthew LONG, Plaintiff,**

**v.**

**BOARD OF EDUCATION, DISTRICT 128, Dr. Joe Wojtena, Diane Phillips, Dan Patterson, and Tim Albers, Defendants.**

**No. 01C3154.**

United States District Court,
N.D. Illinois,
Eastern Division.

May 14, 2001.

William Roy Coulson, Arthur S. Gold, Gold & Rosenfeld, Chicago, IL, for plaintiff.

James John DeSanto, Richard S. Mittelman, DeSanto, Morgan & Mittelman, Libertyville, IL, for defendants.

### *ORDER*

GOTTSCHALL, District Judge.

Plaintiff Matthew Long, a student at Libertyville High School, sued defendants under the Americans with Disabilities Act (ADA), the Rehabilitation Act, and the Individuals with Disabilities Education Act (IDEA). Plaintiff seeks a temporary restraining order directing Libertyville High School to permit him to resume participation in athletics at the high school. For the reasons set forth below, plaintiff's motion is denied. The court will hold a full hearing on July 10, 2001 in order to determine whether to enter a preliminary injunction in plaintiff's favor.

The standards for issuing temporary restraining orders are identical to the standards for preliminary injunctions. *See Bernina of America, Inc. v. Fashion Fab-*

*rics Int'l, Inc.,* No. 01 C 585, 2001 WL 128164, at *1 (N.D.Ill. Feb.9, 2001). Thus, the party seeking the TRO bears the burden of showing: "(1) its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) it will suffer irreparable harm if the injunction is not granted." *Ty, Inc. v. Jones Group, Inc.,* 237 F.3d 891, 895 (7th Cir.2001) (stating the standards for preliminary injunction). If the court is satisfied that these requirements have been met, then it must "consider the irreparable harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied." *Id.* Finally, the court must also consider how the public's interests would be affected by granting or denying the preliminary relief. *Id.* The court, considering all of these factors, is to apply a "sliding scale" approach—"the more likely the plaintiff will succeed on the merits, the less the balance of irreparable harms need favor the plaintiff's position." *Id.*

After considering the evidence presented at the TRO hearing on May 9, 2000, along with the parties' written submissions, the court concludes that the plaintiff's request for a TRO must be denied. As to the first requirement, the plaintiff has not made a strong showing that he will likely succeed on the merits, at least on the minimal record existing at this point. With respect to the second requirement, the plaintiff has shown potential injury for which there is no adequate remedy at law.[1] As to the third requirement, the plaintiff has shown that some irreparable harm will result if the TRO is not issued. Nonetheless, the court concludes that the balance of harms and the public interest at this stage favor the defendants.

---

**1.** Defendants do not contend that plaintiff has an adequate remedy at law. Thus, the court will not discuss this requirement in further detail.

*Likelihood of Success on the Merits*

Defendants advance several reasons why plaintiff is unlikely to succeed on the merits of his ADA, Rehabilitation Act, or IDEA claims. Only a few of defendants' arguments need to be addressed at this stage.

 Defendants argue that plaintiff's ADA and Rehabilitation Act claims are barred because the decisionmakers at Libertyville High School did not have knowledge of plaintiff's disability before they made the decision to suspend him from athletic competition. Defendants are correct that plaintiff cannot prove that the decision to suspend him was discriminatory unless the decisionmakers had knowledge of the disability prior to the decision. *See Stearns v. Board of Educ. for Warren Twnshp. High School Dist. # 121*, No. 99 C 5818, 1999 WL 1044832, at *2–*3 (N.D.Ill. Nov.16, 1999). Plaintiff, however, may also demonstrate discrimination under the ADA or the Rehabilitation Act by showing that the defendant failed to provide a reasonable accommodation after learning of plaintiff's disability. *See Washington v. Indiana High School Athletic Ass'n*, 181 F.3d 840, 847 (7th Cir. 1999). Thus, even if the decision to suspend was not discriminatory, the subsequent failure to accommodate plaintiff might have been.

It is on the question of reasonable accommodation that the court finds plaintiff's arguments troubling. The "accommodation" that plaintiff requests is that he be allowed to play lacrosse and football for Libertyville High School. Essentially, Plaintiff is requesting that the school not enforce its code of conduct against him for any of his past transgressions, despite the fact that the code is otherwise applicable to all students participating in extracurricular activities at the school. Both parties recognize the difficulties in taking such an action. Perhaps the most significant concern with this accommodation is the precedent it would set. The evidence before the court suggests that allowing plaintiff to play lacrosse and football despite his violations of the code of conduct would open the door for other students and parents to challenge its application, thereby inhibiting the uniform and consistent enforcement of the code to Libertyville students.

The record developed to this point does not demonstrate that plaintiff's proposed accommodation is a reasonable burden to place on the school. *See Stearns*, 1999 WL 1044832, at *3 ("A waiver of a rule is unreasonable if it is 'so at odds with the purposes behind the rule that it would be a fundamental and unreasonable change.' ") (quoting *Washington*, 181 F.3d at 850); *Pernice v. City of Chicago*, 237 F.3d 783, 785–86 (7th Cir.2001) ("It is well-established that an employee can be terminated for violations of valid work rules that apply to all employees, even if the employee's violations occurred under the influence of a disability."); *see also Bercovitch v. Baldwin School, Inc.*, 133 F.3d 141, 152–54 (1st Cir.1998) (district court order enjoining school from enforcing its disciplinary code against student suffering from Attention Deficit–Hyperactive Disorder by suspending him from academic program went "far beyond the requirements of reasonable accommodation."). Although *Pernice*, and most cases upholding the application of universal disciplinary rules to disabled plaintiffs, involve behavior caused by drug or alcohol addiction, the Seventh Circuit has also applied the rule in a case where an employee's conduct was caused by mental illness. *See Palmer v. Circuit Court of Cook County, Ill.*, 117 F.3d 351, 352 (7th Cir.1997). The record before the court suggests that waiver of the application of the code of conduct to plaintiff would be, in the words of the *Stearns* court, an "unreasonable change." In this respect, plaintiff

has not met his burden of showing a likelihood of success on the merits.

*Balance of Harms*

Even if the court were to assume that plaintiff had shown some likelihood of success on the merits, the balance of harms appears to favor the defendants. If the court were to issue the TRO, and force the defendants to let plaintiff play in the remainder of the lacrosse season, at least until a preliminary injunction hearing could be held, the results could be devastating to the high school. As mentioned above, the door would be opened to repeated court challenges to the enforcement of the code of conduct. Regardless of the final outcome of this case, a TRO would send the message to other students and parents that an ADA challenge in federal court might thwart the enforcement of codes of conduct at Libertyville and other high schools. The consistent and uniform enforcement of the code of conduct would undoubtedly be threatened. Moreover, if the plaintiff were allowed to return to the lacrosse team immediately it could have a negative impact on the team's morale and cohesiveness, since plaintiff has not played or practiced with the team all year. This court also views as significant the disruptive impact on the school community of displacing the authority of the school administration to enforce its disciplinary rules with a federal court order.

On the other side of the scale, plaintiff will be irreparably harmed to some degree by not being allowed to play the remainder of the lacrosse season.[2] Dr. Best's testimony indicated that plaintiff needs to be engaged in athletic competition, and to pursue success in the only high school activities in which he has consistently achieved success, in order to effectively continue his rehabilitation. But the degree to which the requested TRO would help plaintiff in this respect is unclear. There are, at most, three weeks remaining in the current lacrosse season, leaving little time for plaintiff to participate with the lacrosse team. Additionally, there is no reason to believe that plaintiff would see significant playing time, if any, in the few games remaining, since he has not practiced with the team all season. Although a TRO would allow plaintiff a chance to practice with the lacrosse team for a few weeks, and maybe even play in a few games, this benefit pales in comparison to the effect the TRO would have on enforcement of the code of conduct. Further, Dr. Best's concerns can be minimized to some degree by plaintiff's participation in athletic programs not sponsored by the high school over the summer. For instance, the evidence shows that plaintiff could participate in private lacrosse leagues or athletic camps over the summer, thus providing him with the athletic competition necessary to facilitate his rehabilitation.

Finally, with respect to the public interest, the court notes that the consistent enforcement of high school codes of conduct is not only in the high school's interest but also in the interest of the general public. The codes proscribe illegal and inappropriate behavior, and encourage students to be model citizens. A TRO sending the message that enforcement of the codes can be readily challenged in federal

2. Although defendants make several arguments that plaintiff has not shown irreparable harm, the court concludes that the evidence presented at the TRO hearing was sufficient to establish the potential for irreparable injury to the plaintiff. Dr. Best testified that plaintiff needs to participate in athletics in order to continue his rehabilitation. If the court refuses to enter a TRO, plaintiff will not be able to play or practice with the lacrosse team for the remainder of the season and his recovery will be impeded, according to Dr. Best. Obviously this harm would not be remedied by a later decision in favor of the plaintiff.

court by students with behavioral problems could be detrimental to society as a whole.

The court does not share defendants' skepticism concerning the causal relationship between the plaintiff's disability and his inappropriate behavior. Nevertheless, plaintiff's misconduct was serious and had to be addressed by defendants. The argument that defendants should be ordered to relieve plaintiff from the consequences of his actions by prohibiting them from enforcing a universally applicable disciplinary code does not seem to this court, on this limited record, to be a reasonable solution to this very difficult problem.

Because plaintiff has not shown a likelihood of success on the merits, and because the balance of harms favors the defendants on the record under consideration, plaintiff's motion for a temporary restraining order is denied.